The issue that's before the court in this appeal concerns the propriety of the District Court's remand back to the California State Court. The focus of the hearing on September 2nd in front of the District Court was on the timeliness of the petition for removal, which in our view is a purely procedural matter. In the briefs presented to this court, it seems clear that both parties agree that at least the two core elements of subject matter jurisdiction, that is, non-controversy and diversity of citizenship, have been met in this case. What remains is a discussion about the procedural elements and whether there has been a waiver. The issue relating to the construal of certain elements being procedural versus jurisdictional, as this court pointed out in Lively v. Wild Oats, is important because it benefits the plaintiff. It gives the plaintiff the ability to determine what form it wants to be in, whether it's state court or federal. But the plaintiff has to exercise that right. The plaintiff has to file a motion to remand the case back to the state court. That didn't happen here. And if you look at Smith v. Eileen, which is one of the more recent cases on this issue, there the court found it notable that the plaintiff in that case didn't file a motion to remand and also participated in filing a joint statement that was submitted to the court. The same thing happened in the present case. There was no motion to remand and all of the plaintiff's actions leading up to the case suggested that the plaintiff was where the plaintiff wanted to be. That is, in front of the federal district judge. And when you look at the docket, which was submitted in favor of the record, the petition for removal was filed on May 12th, 2015. Thirty days passed. There was no motion to remand. Then the plaintiff filed a consent to manage the jurisdiction on June 18th. That was after the 30 days had passed. And that is, in essence, actually a consent to jurisdiction of the federal court in and of itself. And then on July 21st, the plaintiff filed the ADR certification form. So, again, this shows, of course, the conduct of wanting to be in federal court. And then, finally, on August 18th, there was a joint case management statement that was filed, prepared by both of the parties, signed by both of the parties, and submitted to the court. The first paragraph of that document says, the parties do not presently believe there are any issues relating to jurisdiction or service. There can't really be any more clear statement that the parties were where they wanted to be. So, in conclusion, the plaintiff needs to have the flexibility. The district court just didn't seem aware, as far as I could tell, of the jurisdiction procedural distinction when it's in demand of a court date. My belief is that the district court was confused as to whether the time constraints were solely jurisdictional or procedural. And I would agree with your argument. And it's also true that nobody told you it was procedural. That is true. One of the issues that came up is that two days prior to the hearing, the district court is in order to the parties to bring evidence of the evidence demonstrating the citizenship of the plaintiff to prove that there was, in fact, first-hand of citizenship, and to not put the parties on notice about the district court's true intention, which was to address the timeliness issue. In fact, going into the hearing, I don't believe either party suspected that timeliness was going to be the focal point of that hearing. It certainly took, sort of, the defense took us off guard, because we thought that the court wanted to just see proof that Mr. Gutierrez was a non-citizen. I think, also, the district court misunderstood that permanent residence in a case like this would also distort jurisdiction. Had Mr. Gutierrez attained permanent residence status, then there would be no jurisdiction in this case. Did you offer a motion for a reconsideration? No, we did not. But the, um... Did you argue? Why does the issue occur only with the district court? Was it a procedural defect that could be argued? We just, it, it, the transcript, as you read through the transcript, there wasn't a lot of room to discuss the details of it. I did ask the court to allow us an additional briefing. I offered to provide authority to the court, because my belief was that the court was asking us to show that, um, that our, our, Mr. Brewer didn't know that the, that Mr. Gutierrez was not a non-citizen. And I was arguing that that was irrelevant, because he defended his convocation to a defendant as a nation. So it did, it got sidetracked a bit. But in retrospect, you know, we did offer the court the opportunity to file an additional briefing, which I think would have clarified this in its entirety. Um, it, like I said, based upon the court's review... The court didn't offer to have an additional on-briefing? That's what it said. The court, uh, the, the judge indicated he didn't want additional authority, and he, uh, rejected the request for additional briefing prior to the issue. And there was no time to brief it beforehand, either? Excuse me? There was no time to brief it beforehand? That's right. The, the, because this issue wasn't, uh, wasn't presented to the parties as being, uh, a concern to the court at the time beforehand. The only concern that the court expressed, as I said before... Supposedly, he had raised it a couple of days before the AP, uh, case that he recovered. That's right. Yeah, and, and, and, well, the, the plaintiff never raised it until the hearing. He didn't declare it? Before, exactly. Well... He didn't raise this ever, I understand. Ever, yeah. Exactly. So there was, there was no reason to believe going into it that this was going to be, uh, a problem. And I think the, the plaintiff here, um, the Plaintiff's Counsel indicated on the record, uh, like I said before numerous times, there was no issue. It wasn't until the District Court judges clearly indicating his intention to remand it back to the Supreme Court. The Plaintiff's Counsel suggested that, uh, that it was untimely and suggested a possible motive which was, was inaccurate. But in any event, the court went ahead and did that. Um, another point that I wanted to... I see. In a, from your knowledge, the other basis for your comment that it wasn't inaccurate. Well, the, the Plaintiff's Counsel was speculating that the rationale for, for removing the case when we did was to avoid a trial, uh, trial date. And, uh, you know, that's not relevant to the concern here. I was just pointing that out that that wasn't the reason. But, um, another issue that, uh, is in the, um, I believe it's brief, concerns the, uh, wherever that the, in the brief, um, appellee, uh, constantly refers to the minute order that the court issued. Without saying so, seeming to imply that somehow the minute order is controlling as opposed to the District Court's, uh, ruling from the bench, which it was very clear in the transcript that, uh, Judge Serrato was making a ruling from the bench. And I don't think there's any citation to authority. Certainly, I have not found any authority to suggest that a minute order was supplant, uh, with the judge's actual statements of, uh, reasons, uh, in the issue of that ruling. So, I don't think that is a, uh, is a valid concern here. Um, the last thing, I, I touched on a moment ago, but I did want to point out again that I think that part of the problem here was that the District Court, uh, believed that citizenship, uh, was the only factor that needed to be considered. That, uh, if Mr. Gutierrez was not a citizen at the time of the, uh, at the time that Mr. Gould represented him, then, therefore, he couldn't have been a, couldn't have become a citizen by the time of the lawsuit that, uh, presently had, uh, presently had issued. And while it's true he couldn't have become a citizen, he couldn't have become a permanent resident. And I think that, again, there was another misunderstanding, uh, by the District Court judge as to what permanent diversity jurisdiction in this case, or diversity of citizenship, that a permanent resident who resides in a particular state, uh, would still distort diversity. So, in conclusion, uh, and I do want to reserve some time for rebuttal. Um, in conclusion, I believe that the only issues that have been addressed by, you know, the District Court judge or plaintiff's counsel have been procedural in nature. I believe that, that when asked, when the District Court judge asked the plaintiff's counsel, uh, at the end of the hearing, what he wished, or, you know, what his opinions were, the only appropriate answer should have been that we waived the right to challenge any procedural deflection defects. Uh, the fact that we're here, uh, you know, uh, well, three years later, addressing this before your honors is, um, is unnecessary because there really was, uh, you know, the plaintiff was, at that time, aware of the plaintiff's point, so it seemed. Anything to the contrary seems to be an afterthought. So, I'll reserve the rest of my time for rebuttal unless your honors have additional questions.  Thank you, Chief of the Court. I'm Gary Teapa for the Pet League. Uh, I want to address a few points, sort of in the order that were, maybe not necessarily in the order that they were stated by, uh, Mr. Rufus Johnson. It could be stated that, uh, the minute order has no application to the appeal, and that you are here. Well, in this minute order, it said lack of jurisdiction, but, um, in his office, the jurisdictional question just isn't. Well, I'm, I'm just saying that to the extent that counsel for the appellant says that you're limited to the transcripts of the, of the hearing, on September 2nd, 2015, the judge did find that the state, and, uh, except for the record, page 148, we find the case, that the case was removed improvidently and without jurisdiction. I'm reminding it's the San Francisco Superior Court. I would say there, there was an, there is an issue as to whether or not the complaint was clear on its face that it was removable, such that the defendant, upon receipt of it initially, knew, or with reasonable intelligence, should have known that it was removable. And I believe that the discussion at the joint, at the case management conference on September 2nd, 2015, went to that point. And the parties, that is to say Mr. Brewer and the judge, had a disagreement on that point. The judge's point of view was that the complaint was clear on its face that there was diversity jurisdiction and it was removable. And Mr. Brewer's counsel took the position that the complaint was not clear on its face, but was rather, quote, indeterminate, end quote, such that one would, one would need to do some sort of investigation or some sort of subjective analysis to determine whether or not the case was removable. And counsel for Mr. Brewer decided that our point in the transcript to say he offered to brief the matter, well he did offer to brief the matter as to whether or not some investigation would be necessary. But he did not offer to brief the matter as to whether this was a procedural versus substantive subject matter jurisdiction issue. There is no, I don't think the judge had a misunderstanding as to whether or not a reasonable investigation was necessary. I think the judge clearly understood that with respect to diversity jurisdiction, where you're talking about either diversity of citizenship or a dispute between a citizen and a lawful permanent resident, the judge understood that the complaint in this case with using reasonable intelligence, which is involving a legal malpractice case by a client who has been ordered deported by an immigration court who retains an immigration attorney to assist him in staying in the country and where the complaint alleges that the client was detained in Seattle. Well obviously he didn't think so because you never objected. Well that's not true. There's been speculation as to, by my counsel for Mr. Cullen and your honor, as to what I thought. I thought. Why have you thought? You didn't make a motion to remit it. It's true. I did not make a motion to remit it. And I'm happy to tell you why. One, by having made this motion for removal in May of 2015, it was a trial date in San Francisco Superior Court of August 27, 2015. Had I even waited 30 days and filed my motion to remand within two weeks of this notice. You'd have to wait 30 days. You could have done it the next day. I'm sorry? You'd have to wait 30 days. You could have done it the next day. I understood. I could have filed it the next day or as soon as I possibly could get the motion together. But Mr. Gruel had already effectively taken the case out from the trial readiness calendar for the San Francisco Superior Court. And there was no way that we're going to have our August 2015 trial in San Francisco Superior Court. Number two, had I brought a formal motion to remand in front of the district court, I suspected that I would have the same arguments that we have here. That Mr. Gruel did not know that diversity of citizenship existed or he did not realize that the amount in controversy exceeded $75,000 and he would argue that the complaint was indeterminate. And looking at the four corners of it on his face, it did not say an amount greater than $75,000. So he didn't know. No, but that doesn't deal with the question of whether or not there was exact diversity. You seem to be saying that once the district court actually ruled on this jurisdiction, was there actually diversity? There was diversity. I've answered that question honestly in front of the district court, and I'm answering it honestly now. I'm not going to. But the truth of the matter, or as I understand it from the U.S. Supreme Court, is that we are past looking at whether there's actual citizenship. If there's actually diversity and if there's actually $75,000, then how can we see? You're telling us that even though those both things are true, we should read the district court as having decided otherwise and setting the case back on what's actually a jurisdictional question. Is that what you're telling me? Yes. Because of the limits on repealing remands? Is that why? Your standard of rule. In other words, you're saying it was a total mistake, but we should nonetheless have a jurisdiction. That's correct. I think the U.S. Supreme Court and my inserted have already said that. Well, I know in general it's true. It's just as you read that as to have the judge make an even bigger mistake than what he made. I don't know. I'm not sure what kind of bigger mistake you're referring to. But this has to do with the issue, as I understand, that you're raising is the expense of review on appeal. That is to say, what you can review or what is your limits, if any, on the standard of repeal and I think on appeal. I believe the courts have stated clearly that regardless of how clearly erroneous a district court's order is, as long as it is colorably characterized as being under 28 U.S.C. 1446C, that it is basically not reviewed. And so I think that the order clearly says that he is remanding the case under 28 U.S.C. section 1446C. He is saying, he is quoting the language of that section, 28 U.S.C. 1446C, as it was drafted at the time of the Thurm-Tron decision by the U.S. Supreme Court in 1976. He's quoting the language that read that the case was removed in provident. And so he's clearly attempting to fall within the scope of 28 U.S.C. section 1446C. The U.S. Supreme Court and the Ninth Circuit have subsequently held that section 28 U.S.C. section 1446C has been amended since 1976 and the Thurm-Tron decision to have slightly different language to what it is today. But as I said, the U.S. Supreme Court and the Ninth Circuit have held that all of these subsequent changes to the language of that statute are basically not, they do not change the import, but what Congress meant to say when it wrote that statute as it stood in 1976 with the word in provident. So I submit that the intent of the district judge was clear to make it colorably characterized as a motion or as a remand under 28 U.S.C. section 1446B. And that basically holds the review right there. Thank you. Regarding this court's authority to review this on appeal, I think this approach is exactly the same as it was in the history court. This court issued an order of full cause following the filing of our notice of appeal and offered, first of all, the defense had to respond and then it offered the plaintiff the opportunity to respond within 10 days to our jurisdictional arguments discussing whether the Ninth Circuit had the ability to review this decision. We filed a response to the order of full cause. The plaintiff or appellee here did not. So again, now to hear this argument recycled once we've already gone through, the OAC has been issued, it's been revoked, and now we're actually on appeal in front of your honors. To hear this argument is disingenuous at this point because this court clearly has jurisdiction under all of the cases you've cited, and widely the court specifically addresses the matter of the application of third imprisonment. The court says, quote, such an inquiry is well within our jurisdictional bounds because it takes aim at the district court's authority, as emphasized, to issue the remand order. We have jurisdiction. And then it cites several cases, and one of the cases it cites, which is the Northern California District Council of Laborers, quotes, under third imprisonment we have jurisdiction to decide whether a district court has the power to do what it did, in practice, in issuing a remand order. Although we cannot examine whether a particular exercise of power was proper. So again, in this particular case, we are looking to see whether the district court had the authority. The question that seems to be driving this, where are we looking? Are we looking at his formal order? Or even his informal order, right? Either his informal order, or the one you said we should be looking at. Since I think that the case was removed improperly and without jurisdiction, I'm remanding it. So he said, again, without jurisdiction. Now, if you read the whole rest of the discussion, you know that he very well thought there was a diversity of jurisdiction, because that's what his whole complaint was, that you didn't discover early enough that there was diversity of jurisdiction. But still, the words he used the first time and the second time were jurisdiction. So the question is, what do we do with that? And I understand that Your Honor, I think Lyle is actually directly on point with that. And with respect to, I can't believe that case is a form dependent rule, but simply because the district court was incorrect in his belief that the time that it's there was purely jurisdictional, doesn't mean we should give credence to the minute order, as opposed to what the court actually said. That to do so would basically allow any district court judge to use, to have a generic language and avoid any real analysis of the jurisdictional questions that are at the heart of these sorts of cases. So no, I think the minute order was basically just shorthand for the rationale that the court gave. And the ruling which, again, I don't have it in front of me,  that he was remanding it back to the city court. So I think the minute order is just shorthand to explain what happened at that hearing. The other thing I did want to address in terms of the trial, the plaintiff's counsel's reasons for not filing a motion to remand. You don't really hold water. There was actually, we filed a motion for summary judgment with the city court at the same time that the police reform was filed. We were taking appropriate steps in the state court to remove the case board. The delay that has resulted seems that it's entirely in the hands of the plaintiffs in terms of, as I said before, the plaintiffs sort of accepted that they wanted to stay in the district court as an action. So unless your honors have other questions, my time is up. Thank you very much.
judges: Reinhardt, Berzon, Montgomery